# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 22-7113**

**September Term, 2022**

FILED ON: APRIL 18, 2022

STACY SCOTT-MCKINNEY, M.D.,

        APPELLANT

v.

CHILDREN'S NATIONAL MEDICAL CENTER, ALSO KNOWN AS CHILDREN'S NATIONAL HEALTH SYSTEM,

        APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02980)

Before: WILKINS and RAO, *Circuit Judges*, and TATEL, *Senior Circuit Judge*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and the briefs of the parties. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the judgment of the district court be affirmed.

Dr. Stacy Scott-McKinney has worked with the Children's National Medical Center (CNMC) as a physician for over a decade. She began suffering neck and shoulder pain and finger tingling while typing and note-taking in 2017. Her orthopedic physician, Dr. David Levin, prescribed a medical scribe as an accommodation for this disability. CNMC promptly provided Scott-McKinney with a scribe, and she continued to work eight-hour days at CNMC. *Scott-McKinney v. Children's National Medical Center*, No. 1:19-cv-02980 (TNM), 2022 WL 2438535, at *5 (D.D.C. July 5, 2022). But the scribe resigned after working at CNMC for one year, Joint Appendix (J.A.) 336–37, and CNMC refused to find a replacement, *Scott-McKinney*, 2022 WL 2438535, at *1.

For the next sixteen months, Scott-McKinney worked without a scribe. *Id.* at *5. During that time, her physical condition deteriorated. As treatment, Levin imposed temporary work restrictions that limited direct patient care to between four and six hours a day, ultimately ordering that Scott-McKinney permanently limit her work to six hours a day. That work restriction remains in place

today, even though she was eventually assigned another medical scribe.

In October 2019, Scott-McKinney filed suit against CNMC, alleging that it discriminated against her on the basis of her disability in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1403.16. The case proceeded to trial, where a jury returned a verdict in favor of Scott-McKinney and awarded $200,000 in compensatory damages.

The parties then proceeded to a hearing on economic damages and injunctive relief. Scott-McKinney sought back pay, front pay to make up for her permanent work restriction of six hours a day, and injunctive relief. The district court granted part of the requested injunctive relief, which is not at issue on appeal, but denied both back pay and front pay. *Scott-McKinney*, 2022 WL 2438535, at *1. Scott-McKinney appeals.

The district court set forth its rationale, along with specific findings of fact, in a thorough and well-reasoned memorandum opinion. "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(6). Our court "regards damage awards as findings of fact" which are not to be disturbed "unless clearly erroneous." *Bucheit v. Palestine Liberation Organization*, 388 F.3d 346, 350 (D.C. Cir. 2004) (citation and internal quotation marks omitted). Both the "inferences drawn from findings of fact" as well as the "findings themselves" are subject to the clearly erroneous standard. *Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983). Factual "findings of causation" are similarly subject to clear error review. *Red Lake Band of Chippewa Indians v. United States*, 936 F.2d 1320, 1324 (D.C. Cir. 1991). On clear error review, we set aside factual findings only "if they are without substantial evidentiary support or were induced by erroneous application of the law." *Id.*

Starting with front pay, the district court properly concluded that Scott-McKinney was unentitled to front pay because she presented "no medical evidence establishing a causal link between [her medical deterioration, which required a permanent work restriction,] and her working without a scribe." *Scott-McKinney*, 2022 WL 2438535, at *6. Scott-McKinney relied on medical evidence from three doctors: Dr. Leo Rozmaryn, Dr. Sunjay Berdia, and Dr. David Levin. Per medical records, Rozmaryn diagnosed Scott-McKinney with repetitive strain syndrome and carpal tunnel syndrome. But at no point do Rozmaryn's notes state that the typing Scott-McKinney was forced to perform because of her lack of scribe *caused* her repetitive strain injuries or carpal tunnel. Instead, Rozmaryn made vague statements that Scott-McKinney's "hand injury is related to work" or that the "*physical stressors of her job* are a significant contributing factor." J.A. 391. Moreover, Scott-McKinney's disability was worsening and her pain "stead[ily] increasing," according to her doctors, for years *before* she worked without a scribe. *Scott-McKinney*, 2022 WL 2438535, at *5. Levin even testified at trial that Scott-McKinney was "no worse off now than had she had the scribe [all] along," Appellee's Br. 31, and in his deposition stated that he could not say with "medical certainty that her conditions worsened as a result of not having that scribe," *Scott-McKinney*, 2022 WL 2438535, at *6 n.7. Although the district court observed that there may be a temporal correlation between Scott-McKinney "losing her scribe and a deterioration in her condition," *id.* at *6, it had substantial evidentiary support for its conclusion that she failed to show the required "causation" needed to secure front-pay damages.

We similarly reject Scott-McKinney's argument that the district court applied the wrong

causation standard and should have applied the "but-for causation" standard set forth in *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). To start, as appellee points out, this argument is forfeited because Scott-McKinney failed to invoke the *Bostock* standard before the district court. *See Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995) ("[I]ssues not raised before judgment in the district court are usually considered to have been waived on appeal."). But even if not forfeited, the argument fails because the district court concluded that there was *no* evidence, beyond Scott-McKinney's own non-medical, self-supporting characterizations, that the lack of a scribe was even *a* cause of the worsening disability and the permanent work restriction. So even applying the *Bostock* standard, the district court's conclusion was not erroneous.

Regarding back pay, the district court first concluded that CNMC's discrimination had no impact on Scott-McKinney's pay in fiscal year 2020 or 2021. True, the district court conceded, "working without a scribe made [Scott-McKinney's] documentation responsibilities significantly more onerous." *Scott-McKinney*, 2022 WL 2438535, at *3. But Scott-McKinney failed to "show[] [that] her loss of efficiency caused her to lose out" on pay. *Id.*

Both CNMC and Scott-McKinney proffered lost revenue calculations to prove their cases. We need not address CNMC's loss calculations and expert testimony, which the district court found "highly credible," *id.* at *2, because even accepting Scott-McKinney's modeling she failed to prove her lost revenue was based on her loss of efficiency. Scott-McKinney's calculations base her lost revenue on her reduction in patients in fiscal year 2021. The district court concluded that Scott-McKinney's calculations did not properly account for the variety of reasons she may have seen reduced patient loads in fiscal year 2021: the coronavirus pandemic, the fact that Scott-McKinney's practice "shut down its second location," or the fact that Scott-McKinney took both a three-week vacation and an eight-week sabbatical in 2021. *Scott-McKinney*, 2022 WL 2438535, at *4. With so many potential reasons for reduced patient loads unrelated to Scott-McKinney's disability or CNMC's discrimination, the district court found Scott-McKinney failed to prove back-pay damages "to a 'reasonable certainty.'" *Id.* at *5 (quoting *Robinson v. D.C.*, 341 F. Supp. 3d 97, 109 (D.D.C. 2018)). Given this reasoned explanation, the district court did not clearly err in its conclusion.

This disposition is unpublished. *See* D.C. Cir. R. 36(d). The Clerk will withhold the mandate until seven days after any timely petition for rehearing or rehearing en banc is resolved. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

<u>**Per Curiam**</u>

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
        Daniel J. Reidy
        Deputy Clerk